■ EHAB R. KATTAS et al., Respondents, v CHARLES S. SHERMAN, Appellant. [820 NYS2d 631]—

In an action, inter alia, for a judgment declaring, among other things, that the defendant repudiated a contract for the sale of real estate dated April 25, 2002, the defendant appeals from a judgment of the Supreme Court, Suffolk County (Underwood, J.), entered May 26, 2004, which, upon an order of the same court dated January 13, 2004, granting the plaintiffs' motion for summary judgment and denying the defendant's cross motion to disqualify the plaintiff's counsel, declared, inter alia, that the defendant had repudiated the contract, and directed the return of the plaintiffs' down payment.

Ordered that the judgment is reversed, on the law, with costs, the motion for summary judgment is denied, the cross motion to disqualify the plaintiffs' counsel is granted, and the order dated January 13, 2004, is modified accordingly.

The plaintiffs entered into a contract of sale with the defendant to purchase a house located in Cold Spring Harbor in the Town of Huntington. The contract required the defendant to obtain a letter in lieu of a certificate of occupancy (hereinafter

the letter) since the premises predated the Building Code in the Town of Huntington. The plaintiffs allege that the defendant refused to obtain the letter and thereby anticipatorily repudiated the contract.

It is settled that summary judgment is unwarranted when, after the movant makes out a prima facie case, the opposing party demonstrates that there are material issues of fact which remain for trial (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). Here it remains to be resolved whether or not the defendant anticipatorily repudiated the contract of sale, and consequently, whether the plaintiffs were entitled to cancel the contract of sale and receive a return of their down payment (*see Cohen v Kranz*, 12 NY2d 242 [1963]; *Hegner v Reed*, 2 AD3d 683 [2003]; *Klein v Opert*, 218 AD2d 784 [1995]). Accordingly, the plaintiffs were not entitled to summary judgment.

The defendant is correct that the counsel for the plaintiffs should have been disqualified. The plaintiffs' counsel is a potential witness in the determination of the breach of contract issue, and was intimately involved in the failed purchase of the property. He dealt with the defendant directly during the latter's application for the letter, and the defendant alleges that plaintiffs' counsel failed to submit the application as they had previously agreed. In addition, the defendant conversed directly with the plaintiffs' counsel via phone when the defendant indicated that he would obtain the letter after his alleged prior refusal to do so. Under these circumstances, the plaintiffs' counsel became a witness with information about relevant and material facts and thus should have been disqualified (*see Hoerger v Board of Educ. of Great Neck Union Free School Dist.*, 129 AD2d 659 [1987]; *Pulichino v Pulichino*, 108 AD2d 803 [1985]; *North Shore Neurosurgical Group v Leivy*, 72 AD2d 598 [1979]). Finally, under the facts of this case, there is no merit to the plaintiffs' contention that the motion to disqualify was untimely (*cf. Eisenstadt v Eisenstadt*, 282 AD2d 570 [2001]) Schmidt, J.P., Santucci and Luciano, JJ., concur.

Lifson, J. (dissenting and voting to affirm): The plaintiffs endeavored to purchase a home located within a designated historic district in Cold Spring Harbor in the Town of Huntington. The seller of the property was an attorney who represented himself. The parties entered into a contract of sale on April 25, 2002, with an anticipated closing date of June 3, 2002.

To the extent pertinent here, the contract contained a representation by the defendant that the structure on the property predated the Building Code of the Town of Huntington (herein-

after the Code). The contract obligated the defendant to produce certificates of occupancy for any improvements made to the structures on the property (excluding the sheds). The contract further provided as follows: "Notwithstanding the foregoing, in the event a variance or other relief from the provisions of any municipal rule, regulation, law or ordinance is required in order for seller to obtain said Certificate of Occupancy as provided herein, in other words, should said Certificate of Occupancy not be able to issue as a matter of right, then and in that event, either party shall be entitled to cancel this Contract . . ." (emphasis added).

Paragraph 7 of the second rider to the contract further obligated the defendant to make prompt application to the Town for a letter in lieu of certificate of occupancy (hereinafter the letter) for construction which preceded the adoption of the Code. However, contrary to that provision of the contract improvements had been made to the house which were subject to the provisions of the Code, so that a certificate of occupancy was required for those improvements (and that certificate of occupancy was not issuable as of right). In addition, because the property was located in an historic district, the Code required—notwithstanding the provisions in the contract to the contrary—that no certificate of occupancy would be issued unless the sheds on the property were either made Code compliant or demolished. Upon learning of these circumstances, the plaintiffs' attorney, who had been doing much of the interaction with the various municipal officials, advised the defendant on July 9, 2002 that unless he rectified the problems the plaintiffs intended to terminate the contract. The defendant faxed a response to the attorney which unequivocally repudiated any responsibility to obtain the necessary municipal certificates. The plaintiffs then faxed a copy of the above cited contract provisions to the defendant. At this point the paper trail ends. In opposing the plaintiffs' motion for summary judgment, the defendant asserted that he immediately telephoned the plaintiffs' counsel, apologized, and stated that he would obtain the approvals in question. Thereafter, the defendant called the plaintiffs directly and tried to reach some agreement with them, but to no avail.

The next day, July 10, 2002, the defendant left for a trip. When he returned he found a fax dated July 9, 2002 from plaintiffs' attorney confirming what the plaintiffs believed to be defendant's agreement to cancel the contract. In opposing the motion for summary judgment, the defendant contended that this fax was incorrectly dated July 9, 2002 when in actuality it should have been dated July 10, 2002, i.e., when the defendant was not available to receive it.

The majority finds that an issue of fact exists regarding the defendant's obligation to obtain the letter and whether the defendant anticipatorily repudiated the contract of sale. However, the contract at issue is clear and explicit that the obligation to procure all the municipal certificates rested solely upon the defendant. The defendant belatedly then and now admits he was so obligated.

The plaintiffs' moving papers set forth the above facts via a written trail of various faxes culminating in the plaintiffs' fax indicating in essence that the defendant had repudiated his obligation to obtain the requisite municipal approvals and that they deemed the contract canceled. The plaintiffs clearly demonstrated the absence of a factual dispute and their entitlement to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Zuckerman v City of New York, 49 NY2d 557 [1980]). The majority seems to suggest that the defendant's statement that he made a telephone call reversing orally his documented written position repudiating the contract suffices to create an issue of fact or that a question might exist as to who occasioned the delay in obtaining the municipal applications. I respectfully disagree.

Having clearly and explicitly evidenced a position in writing inconsistent with his contractual obligation to obtain the necessary municipal approvals, the defendant failed to demonstrate in an equivalent manner his renunciation of his repudiation. The contract, having been effectively canceled in writing, could not be revived orally (see General Obligations Law § 5-701). In that regard, I note that the record does not contain any indication that the plaintiffs agreed to revive the contract or to nullify their prior position, to wit, that the defendant had repudiated the contract thereby effectively terminating it. Moreover, I note that the circumstances reveal that the municipal approvals in question could no longer be obtained as of right. The plaintiffs had to apply for both a demolition permit for the shed and a certificate of occupancy for the structural alterations of the house, since it was located in a designated historic district. This process would entail a substantial amount of time and would be subject to the imposition of conditions and/or the discretion of other municipal agencies—a circumstance which pursuant to the terms of the contract gave either party the right to cancel the contract. Although couched in terms of anticipatory breach, the plaintiffs merely canceled the contract pursuant to the terms cited above which afforded them such right where municipal approvals could not be obtained "of right" (i.e., without resort to the discretion of the Zoning Board of Appeals).

Since I conclude that the granting of summary judgment was proper, there is no necessity to address the issue of disqualification of the plaintiffs' attorney at trial. The only issue to be determined is the assessment of damages, an issue to which the underpinning of the defendant's claim for disqualification does not pertain. I therefore respectfully dissent and believe that the determination of the Supreme Court should be affirmed.