■ S.E.M. SECURITY SYSTEMS, INC., Respondent, v EARL LORENCE ENTERPRISES, Formerly Known as E.F. LORENCE & SONS, INC., Doing Business as INTER COUNTY ALARM SYSTEMS, et al., Appellants. [992 NYS2d 539]—

In an action, inter alia, to recover damages for breach of contract, the defendants appeal (1) from an order of the Supreme Court, Orange County (Bartlett, J.), dated May 8, 2012, which granted the plaintiff's application to strike an errata sheet annexed to the transcript of the deposition testimony of the defendant Scott Lorence, (2), as limited by their brief, from so much of an order of the same court dated October 17, 2012, as granted the plaintiff's motion for summary judgment on the

issue of liability on the cause of action alleging breach of contract and dismissing their counterclaims, denied their cross motion for summary judgment dismissing the complaint and on their counterclaims, and, upon reargument, adhered to the determination in the order dated May 8, 2012, granting the plaintiff's application to strike the errata sheet annexed to the transcript of the deposition testimony of Scott Lorence, and (3), from an order of the same court dated January 9, 2013, which, in effect, denied their motion for leave to renew and reargue their opposition to the plaintiff's motion for summary judgment.

Ordered that the appeal from the order dated May 8, 2012 is dismissed, without costs or disbursements, as no appeal lies as of right from an order that does not decide a motion made on notice (*see* CPLR 5701 [a] [2]), leave to appeal has not been granted, and the order was superseded by the order dated October 17, 2012, made upon reargument; and it is further,

Ordered that the appeal from so much of the order dated January 9, 2013 as denied that branch of the defendants' motion which was for leave to reargue is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated October 17, 2012 is modified, on the law, by deleting the provisions thereof granting the plaintiff's motion for summary judgment on the issue of liability on the cause of action alleging breach of contract and dismissing the defendants' counterclaims, and substituting therefor a provision denying the plaintiff's motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order dated January 9, 2013 is affirmed insofar as reviewed, without costs or disbursements.

The defendants installed, serviced, and monitored fire alarm systems. The plaintiff sought to purchase the defendants' business pursuant to an asset purchase agreement (hereinafter the APA), with the purchase price dependent on revenues received from existing customers. The APA provided that the parties were required to work together in good faith to determine which customer contracts were to be included in the purchase price. The details of those contracts were to be compiled in a "Closing Date Statement" that was to be generated no later than 10 days prior to the closing.

The APA stated that the closing date was December 1, 2010. According to the complaint, that date was selected for closing because the defendants were concerned that capital gains taxes

would increase as of January 1, 2011. Accordingly, if the closing occurred on December 1, 2010, the plaintiff was entitled to receive the Closing Date Statement by November 20, 2010.

The APA required that customer accounts included in the Closing Date Statement be supported by binding written contracts between the customer and the defendants that were assignable without consent of the customer, not modified from their printed form, and automatically renewable "without any action by or on behalf of any Person." Pursuant to General Obligations Law § 5-903, contracts that are automatically renewable for a period of more than one month must provide that the customer be notified that the contract is being automatically renewed. Therefore, the provision of the APA requiring automatic renewal of existing customer contracts, "without any action by or on behalf of any Person," required the existence of customer contracts that conflicted with the General Obligations Law. The plaintiff's president, Stephen E. Mocarsky, noted this discrepancy in his deposition.

A customer contract was defined in the APA as a contract on the customer's written form, or a contract on the defendants' written form or a form created by another seller where the customer had the sole discretion to accept or reject the form of the customer contract. The plaintiff's president stated at his deposition that he did not have a problem with the form contracts used by the defendants. The plaintiff's attorney nevertheless took the position that if the defendants' customer contracts did not employ the plaintiff's own form customer contract, those customer contracts, and the accounts represented by those customer contracts, were only acceptable as part of the APA in the plaintiff's sole discretion. The plaintiff's attorney also informed the defendants' attorney that 80% of the defendants' customer contracts were deemed unenforceable by virtue of General Obligations Law § 5-903 and, consequently, the defendants would not be compensated for them.

In an email message dated November 15, 2010, the defendants informed the plaintiff that they no longer wanted to sell. The defendants failed to deliver the Closing Date Statement on November 20, 2010. By letter dated November 26, 2010, the plaintiff notified the defendants that it would not be prepared to close the transaction until a reasonable time after it received the Closing Date Statement, and advised the defendants that the failure to deliver the Closing Date Statement constituted a breach of the APA. The defendants' attorney replied that the APA was not binding because the parties had not agreed to the purchase price and which customer contracts and accounts were

eligible for inclusion in the calculation of the purchase price. However, in an email message dated December 5, 2010, the defendant Scott Lorence advised the plaintiff's president that the defendants decided to "move forward" with the transaction, and listed a number of items that needed "to be discussed more thoroughly."

The defendants retained Raymond Lynn & Associates, LLC, to prepare the Closing Date Statement in accordance with the APA. The Closing Date Statement was completed on or about January 20, 2011, and delivered to the plaintiff on that day by email. The plaintiff's president admitted that he received it, but claimed he did not know why, because it was past due and incomplete.

The plaintiff scheduled a meeting with the defendants for January 25, 2011. The plaintiff's attorney said the agenda was simple: "*Do defendants want to deliver the Closing Date Statement to Buyer* as they are required to do under the detailed written agreement they signed and then close the transaction to get cash into their pockets, and begin to rehabilitate any non-performing accounts so that they can get even more money into their pocket OR would they prefer to retain and pay for defense counsel, defend this case through discovery and motion practice and then go to trial so that a judge can decide how much in damages we are entitled to receive?" The record does not reflect that the meeting took place and, on February 22, 2011, the plaintiff commenced the instant action, inter alia, to recover damages for breach of contract. The defendants counterclaimed, inter alia, for reformation and rescission.

After issue was joined, the plaintiff moved for summary judgment on the issue of liability on the cause of action alleging breach of contract and dismissing the defendants' counterclaims, and the defendants cross-moved, inter alia, for summary judgment on their counterclaims for reformation and rescission, contending that the plaintiff breached the implied covenant of good faith and fair dealing. The Supreme Court granted the plaintiff's motion for summary judgment and denied the defendants' cross motion.

Contrary to the determination of the Supreme Court, the plaintiff failed to establish the absence of material issues of fact, thus precluding the award of summary judgment to it (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). In November 2010, the defendants committed an anticipatory breach, leaving the plaintiff with a choice of either treating the contract as terminated and seeking damages, or ignoring the breach and waiting to see if the defendants would perform (*see*

*Velazquez v Equity LLC*, 28 AD3d 473 [2006]). The plaintiff pursued the latter course. The Supreme Court found that the anticipatory breach became an actual breach when the defendants failed to deliver a Closing Date Statement by November 20, 2010. However, as the defendants correctly noted in opposition to the plaintiff's motion for summary judgment, the APA did not make time of the essence (*see #1 Funding Ctr., Inc. v H & G Operating Corp.*, 48 AD3d 908 [2008]). Further, the plaintiff did not terminate the contract on November 20, 2010, and the Closing Date Statement was ultimately provided on January 20, 2011.

The plaintiff's submission revealed the existence of triable issues of fact, inter alia, as to whether the defendants' failure to deliver the Closing Date Statement earlier than January 20, 2011, constituted a material breach of the APA, or whether the Closing Date Statement that was ultimately delivered was incomplete, thus precluding an award of summary judgment to it. Further, there are triable issues of fact as to the meaning of the terms of the APA, since certain terms are ambiguous, the plaintiff's president and the plaintiff's own attorney offered differing views as to the meaning of those terms, and the term requiring automatic renewal of customer contracts was facially inconsistent with New York law. In view of the foregoing, the plaintiff was not entitled to summary judgment on the issue of liability on the cause of action alleging a breach of contract or dismissing the defendants' counterclaims.

However, upon reargument, the Supreme Court properly adhered to its determination granting the plaintiff's application to strike an errata sheet attached to the transcript of the deposition of the defendant Scott Lorrance, since the defendant did not provide adequate reasons for the proposed changes to his deposition testimony (*see Ashford v Tannenhauser*, 108 AD3d 735, 736 [2013]). Dillon, J.P., Hall, Miller and Hinds-Radix, JJ., concur.